1 | Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**

2 | 1901 Harrison St., Suite 1100
Oakland, California 94612

3 | Telephone:    (510) 922-1802

4 | Facsimile:    (510) 844-7701
mbainer@bainerlawfirm.com

5 | Attorneys for Plaintiffs
Jesse Hoffman and Philp Dolan

6 |

7 | *Additional Counsel Listed on Next Page*

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF CALIFORNIA**

10 |

11 | JESSE HOFFMAN and PHILIP DOLAN, individually and on behalf of other similarly situated,

12 |

13 |                         Plaintiffs,

14 |                v.

15 | G&K SERVICES, INC., a Minnesota corporation; and DOES 1 through 100, inclusive,

16 |

17 |                         Defendants.

Case No.:  5:17-cv-04465-LHK

**JOINT NOTICE OF MOTION AND JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date:          December 13, 2018
Time:          1:30 p.m.
Courtroom:    8

SQUIRE PATTON BOGGS (US) LLP
Michael W. Kelly (State Bar # 214038)
michael.kelly@squirepb.com
Melissa B. Black (State Bar # 289545)
melissa.black@squirepb.com
275 Battery Street, Suite 2600
San Francisco, California  94111
Telephone:     +1 415 954 0200
Facsimile:     +1 415 393 9887

Marisol C. Mork (State Bar # 265170)
Marisol.mork@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone:     +1 213 624 2500
Facsimile:     +1 213 623 4581

Attorneys for Defendant
G&K SERVICES, LLC erroneously served as
G&K SERVICES, INC.

1    **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE** that on December 13, 2018 at 1:30 p.m., or as soon thereafter as may

3    be heard, before the Honorable Lucy H. Koh in Courtroom 8 of the above-entitled court, located at 280

4    South 1st Street, San Jose, CA 95113, Plaintiffs Jesse Hoffman and Defendant G&K Services, Inc. will,

5    and hereby do, jointly move this Court to:

6        1.    Preliminarily approve the settlement described in the Joint Stipulation of Class Action

7    Settlement and Release and Notice of Class Action Settlement (attached as Exhibits "A" and "B,"

8    respectively, to the Declaration of Matthew Bainer);

9        2.    Conditionally certify, for settlement purposes only, the proposed settlement class;

10        3.    Approve distribution of the proposed Notice of Class Action Settlement to the settlement

11    class;

12        4.    Appoint Plaintiffs Jesse Hoffman and Philip Dolan as the class representatives;

13        5.    Appoint The Bainer Law Firm as Class Counsel;

14        6.    Appoint CPT Group as the claims administrator; and

15        7.    Set a hearing date for final approval of the settlement.

16        This Motion is based upon: (1) this Joint Notice of Motion and Joint Motion; (2) the

17    Memorandum of Points and Authorities in Support of Motion for Preliminary Approval of Class Action

18    Settlement; (3) the Declaration of Matthew Bainer; (4) the Joint Stipulation of Class Action Settlement and

19    Release; (5) the Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary

20    Approval of Class Action Settlement; and (7) other documentary and oral evidence or argument as may be

21    presented to the Court at or prior to the hearing of this Motion. This Motion is brought jointly by all parties

22    herein.

23

24    Dated: October 1, 2018                              THE BAINER LAW FIRM

25

26                                                         By: /s/ Matthew R. Bainer
                                                              Matthew R. Bainer
27                                                            Attorneys for Plaintiff
                                                              Jesse Hoffman and Philip Dolan
28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2

Dated:  October 1, 2018                    SQUIRE PATTON BOGGS (US) LLP

3

4                                          By: */s/ Michael W. Kelly*
                                               Michael W. Kelly
5                                              Marisol C. Mork
                                               Melissa B. Black
6                                              Attorneys for Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

2

# TABLE OF CONTENTS

3

**INTRODUCTION** ................................................................................................................. 1

4

**FACTS AND PROCEDURE** ................................................................................................ 2

5

A.    Brief Overview of the Litigation.................................................................. 2

6

B.    Plaintiff Actively Engaged in the Discovery Process................................... 3

7

C.    The Parties Settled After a Full Day of Arm's Length Negotiations at a Private

8

Mediation. ................................................................................................... 4

9

1.    The Proposed Settlement Fully Resolves Plaintiff's Claims. .......................... 4

10

(a)    Composition of the Settlement Class ................................................... 4

11

(b)    Settlement Consideration ...................................................................... 4

12

2.    Formula for Calculating Settlement Payments.................................................. 5

13

3.    Release by the Settlement Class .......................................................................... 6

14

**ARGUMENT** ......................................................................................................................... 6

15

A.    The Court Should Preliminary Approve the Settlement. ............................. 6

16

B.    The Settlement Was Negotiated after Plaintiff's Counsel Conducted a Thorough

17

Investigation of the Factual and Legal Issues. ............................................ 7

18

C.    The Settlement Was Reached through Arm's-Length Bargaining in Which All

19

Parties Were Represented by Experienced Counsel. ................................... 7

20

D.    The Proposed Settlement Is Reasonable Given the Strengths of Plaintiff's Claims and

21

the Risks and Expense of Litigation. ........................................................... 8

22

E.    The Proposed Class Representative Enhancement Payments Are Reasonable. ................... 10

23

F.    The Negotiated Attorneys' Fees and Costs Are Reasonable. .................................. 10

24

G.    The Proposed Class Meets the Requirements of Rule 23. ................................ 11

25

1.    The Proposed Class Is Sufficiently Numerous and Ascertainable. ............................. 11

26

2.    There are Common Questions of Law and Fact.............................................. 12

27

3.    Plaintiff's Claims Are Typical of the Proposed Settlement Class.............................. 12

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

4.    Plaintiff and Their Counsel Will Adequately Represent the Interests of the
      Proposed Settlement Class........................................................................................ 12

H.    Common Issues Predominate Over Individual Issues. .................................................... 13

I.    Class Settlement Is Superior to Other Available Means of Resolution........................... 13

J.    The Proposed Class Notice Adequately Informs Class Members About The Case And
      Proposed Settlement...................................................................................................... 14

**CONCLUSION** ...................................................................................................................... 15

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)........................................................ 13

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ..................................................... 14

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007)......................... 10

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D. Pa. 1985) .................................... 12

*Brown v. Fed. Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008) ............................... 10

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ......................................... 9

*Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236

(N.D. Cal. 2010)......................................................................................................... 14

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ............ 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................. 14, 15, 16

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist.

LEXIS 108195 (N.D. Cal. Nov. 5, 2008) ..................................................................... 9

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS

145551 (N.D. Cal. June 25, 2008)................................................................................ 9

*In Re Janney Montgomery Scott LLC Fin. Consultant Litig.*,

Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009)........... 12

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) ............... 10

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008)....................................... 10

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012)................................................... 8

*Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470 (9th Cir. 1995) .................. 12

*Marisol v. Giuliani*, 126 F.3d 372 (2nd Cir. 1997)...................................................... 14

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ........................................................... 8

*Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523

(C.D. Cal. 2004).......................................................................................................... 8

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868

    (C.D. Cal. Jan. 17, 2013) ........................................................................ 10

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ........................................ 14

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) ......................... 11

*Stanton v. Boeing Company*, 327 F.3d 938 (9th Cir. 2003) ............................. 8

*Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal.

    Feb. 25, 2008) ...................................................................................... 12

*Torrisi v. Tuscson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993) ..................... 8

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) ............ 11

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114

    (E.D. Cal. 2009) .................................................................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .......................... 12

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) .............. 16

**STATE CASES**

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006) ......................... 10

*Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715 (2004) ...................... 12

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ............... 9, 10

*Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380 (2010) ............... 12

*Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43 (2008) .................................... 13

*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007) .............. 10

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) ........................ 10

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) ........................... 10

*Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) ..... 10, 12

*Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) ................................................ 10

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1

OTHER AUTHORITIES

2    Fed. R. Civ. P. 23 ........................................................................................................ 13, 16

3    Fed. R. Civ. P. 23(a) ............................................................................................... 13, 14, 15

4    Fed. R. Civ. P. 23(a)(1) ...................................................................................................... 13

5    Fed. R. Civ. P. 23(a)(2) ...................................................................................................... 14

6    Fed. R. Civ. P. 23(a)(4) ...................................................................................................... 14

7    Fed. R. Civ. P. 23(b)(3) ...................................................................................................... 13

8    Fed. R. Civ. P. 23(c)(2) ...................................................................................................... 17

9    Fed. R. Civ. P. 23(e) ............................................................................................................. 8

10   Fed. R. Civ. P. 23(e)(1)(A) ................................................................................................... 7

11

12   TREATISES

13   3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) ....................................... 8

14   Manual for Complex Litigation (4th ed. 2004) .................................................................. 7

15   Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004) ....................................... 13

16   *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) .............................. 17

17   Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements:*

18        *An Empirical Study*, J. of Empirical Legal Studies, Vol. 1 (March 2004) ............................ 13

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### INTRODUCTION

3    Plaintiffs Jesse Hoffman and ("Plaintiffs") and Defendants G&K Sevices, Inc., G&K Services,

4    LLC, Cintas Corporation No. 2 and Cintas Corporation No. 3[1] ("Defendants" and/or "G&K") jointly seek

5    preliminary approval of the Joint Stipulation of Class Action Settlement and Release,[2] which, if approved,

6    would provide significant monetary relief for approximately 175 current and former Route Sales Driver,

7    Route Sales Representative, Assistant to Delivery and Route Sales Helper who worked for Defendant in

8    California.

9    The basic terms of the Settlement provide for the following:

10   (1)    A Settlement Class defined as any individual employed by G&K Services, Inc. as a Route
11          Sales Driver, Route Sales Representative, Assistant to Delivery or Route Sales Helper in
            the state of California at any time during the period from June 19, 2013 through the date of
12          preliminary approval.[3]

13   (2)    A Class Settlement Amount of $650,000.  The Class Settlement Amount includes:

14          (a)    A Net Settlement Amount of approximately $410,583.34 (the Class Settlement
15                 Amount minus the requested Attorneys' Fees and Costs, Settlement
                   Administration Costs, and the requested Class Representative Enhancement
16                 Payments), which will be allocated to participating Class Members on a pro-rata
                   basis according to the number of weeks that each Class Member worked during
17                 the Class Period ;

18   ---

19   [1] The Complaint herein was filed against Defendant "G&K Services, Inc." Defendant subsequently answered on behalf of G&K Services, LLC, which Defendant maintained was erroneously named as G&K Services, Inc. During the course of the litigation, G&K Services, LLC was wholly acquired by Cintas Corporation through the entities Cintas Corporation No. 2 and Cintas Corporation No. 3. All corporate entities are parties to the settlement agreement and release underlying the instant Motion.

22   [2] Hereinafter, "Settlement" or "Settlement Agreement" as attached as Exhibit "A," to Declaration of Matthew Bainer in Support of Motion for Preliminary Approval ("Bainer Decl").  Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

24   [3] The original proposed class definition, as proposed in Plaintiff's Complaint, was "[a]ll individuals who worked for Defendants in the state of California as Route Sales Drivers, Route Sales Helpers, or other similar position titles, at any time during the period from four years prior to the filing of this Complaint until the date of certification." Based on discovery exchanged in the case, the term "other similar position titles" has been replaced by the actual job titles for those positions, namely "Route Sales Representative" and "Assistant to Delivery." The included class period end date has also been updated from "the date of certification" to "the date of preliminary approval" to reflect the parties settlement and the settlement approval process.

(b)      Attorneys' fees of up to one-third of the Class Settlement Amount, or $216,666.66, and reasonable litigation costs and expenses, currently estimated not to exceed $10,000;

(c)      Settlement Administration Costs, currently estimated to be $7,750, to be paid to the jointly selected class action settlement administrator CPT Group ("CPT")[4];

(d)      A Class Representative Enhancement Payment of $2,500 each to Plaintiffs Jesse Hoffman and Philip Dolan.

Plaintiff and Defendant negotiated the Settlement at arm's length with the assistance of experienced class action employment mediator Tripper Ortman, Esq.  The Settlement provides relief to Class Members that is fair, reasonable and valuable especially considering the risks inherent in proceeding to trial.  Indeed, the settlement provides an average net recovery of more than $2,345, which is significantly more than other recent wage and hour settlements.  The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*).  Through this settlement, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendant prevailing at trial.

For these and other reasons, the proposed Settlement satisfies all criteria for preliminary settlement approval.

## FACTS AND PROCEDURE

### A.      Brief Overview of the Litigation

Plaintiffs filed their class action complaint on June 19, 2017 in Santa Clara County Superior Court. The Complaint alleges violations of (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; and (7) unfair competition.  On August 4, 2017, Defendant removed the action to the United States District Court, Northern District of California pursuant to the Class Action Fairness Act.[5]

---

[4] *See* Exhibit "C" to Bainer Decl.

[5] Defendant is aware of the requirement under the Class Action Fairness Act to notify the appropriate State officials of each State in which a class member lives of the proposed settlement and will provide such notice, and file a proof of service in regards thereto with this Court, within the deadline of 10 days following the filing of the instant Motion.

Plaintiff's Complaint's claims flow from the following core factual allegations:

- G&K did not consistently provide non-exempt employees with a timely meal or rest breaks, as required under California Law.

- G&K did not consistently pay employees for allegedly missed meal and rest breaks.

- G&K required employees to perform additional work tasks while off-the-clock, resulting in unpaid work time.

- As a derivative result of the above allegations, G&K failed to provide accurate pay stubs and failed to pay all terminated employees the correct amount of wages earned.

### B.    Plaintiff Actively Engaged in the Discovery Process.

Plaintiff has conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of the proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof.  For example, Plaintiff served, and Defendant responded to, written discovery in the form of both Special interrogatories and Requests for Documents. Plaintiff subsequently met and conferred repeatedly regarding the scope of Defendant's production and responses and additional information to be provided. In response to this discovery, Defendant produced policy documents, handbooks, wage and hour records, and the results of a sampling of class member time records. Additionally, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information allowing Plaintiffs to determine the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period and the total number of workweeks worked by Class Members during the Class Period.  (Bainer Decl. ¶ 3.)

Additionally, Plaintiff's Counsel performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiff's eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release; and (11) and drafting preliminary approval papers.  The document and data exchanges allowed Plaintiff's Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement.  (Bainer Decl. ¶ 4.)

### C.    The Parties Settled After an Arm's Length Negotiation in a Private Mediation.

After exchanging documents and conducting preliminary settlement discussions, the parties attended a mediation with Tripper Ortman, who specializes in mediating employment disputes, including wage and hour class actions.  As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several weeks.  At all times, the Parties' negotiations were adversarial and non-collusive.  The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue.  (Bainer Decl. ¶ 5.)

### 1.    The Proposed Settlement Fully Resolves Plaintiff's Claims.

#### (a)    Composition of the Settlement Class

The proposed Settlement Class consists of any individual employed by G&K Services, Inc. as a Route Sales Driver, Route Sales Representative, Assistant to Delivery or Route Sales Helper in the state of California at any time during the period from June 19, 2013 through the date of preliminary approval. (Settlement Agreement ¶¶ 12-13)

#### (b)    Settlement Consideration

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for a Class Settlement Amount of $650,000.  The Class Settlement Amount includes (1) settlement payments to each Class Member who submits a valid claim form; (2) up to $216,666.66 in attorneys' fees; (3) reasonable litigation costs and expenses, currently estimated not to exceed $10,000; (4) Settlement Administration Costs of approximately $7,750.00 (current estimate); and (5) Class Representative Enhancement Payment of $2,500 to each Plaintiff.  (Settlement Agreement ¶29) A premium is appropriate for Plaintiffs Jesse

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1    Hoffman and Philip Dolan since they were the lead plaintiffs, actively supported Plaintiff's Counsel's

2    efforts on behalf of the class and are executing a full release of claims as part of the Settlement Agreement.

3        Subject to the Court approving Attorneys' Fees and Costs, Settlement Administration Costs, and

4    the Class Representative Enhancement Payments, the Net Settlement Amount will be distributed to all

5    Participating Class Members who do not opt-out of the settlement.  Because the Class Settlement Amount

6    is non-reversionary, 100% of the Net Settlement Amount, less all employee and all portions of any payroll

7    tax requirements and any other applicable payroll deductions required by law, will be paid to Participating

8    Class Members, and without the need to submit claims for payment.

9    **2.    Formula for Calculating Settlement Payments**

10        Each Class Member's share of the Net Settlement Amount will be proportional to the number of

11    weeks he or she worked as a Class Member during the Class Period.  (Settlement Agreement ¶31) The

12    Settlement Administrator will calculate Individual Settlement Payments as follows:

13    - Defendant will provide to the Settlement Administrator an electronic database of all Class
14      Members, including each Class Member's name, social security number, last known
         address, telephone number(s), and, the total number of Workweeks.

15    - To determine each Class Member's estimated Individual Settlement Payment, the
16      Settlement Administrator will divide the Net Settlement Amount by the total number of
17      Workweeks for the entire Settlement Class, resulting in the Net Settlement Workweek
         Value, and then multiplying the Net Settlement Workweek Value by the number of
18      workweeks worked by each Participating Class Member during the Class Period.

19    - The Individual Settlement Payment will be reduced by any required deductions for each
20      Participating Class Member as specifically set forth herein, including employee-side tax
         withholdings or deductions. Defendant will pay any employer-side tax payments.

21        There are approximately 175 Class Members, so the average net recovery will likely exceed

22    $2,345.  This average net recovery is significantly higher than many wage and hour class action settlements

23    approved by California state and federal courts.[6]

24

25    [6] *See, e.g., Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008)
26    (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-
      00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza
27    Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120);
      *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net
28    recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A.

Page 5

1

### 3. Release by the Settlement Class

2

In exchange for the Class Settlement Amount, Plaintiffs and Class Members who do not opt out

3

will release the Released Claims. The Released Claims are those claims, within the applicable statute of

4

limitations period (June 19, 2013, through the date of Preliminary Approval) "based on the facts or

5

violations alleged in the Action" (Settlement Agreement ¶33).

6

### ARGUMENT

7

### A. The Court Should Preliminary Approve the Settlement.

8

Class action settlements must be approved by the court and notice of the settlement must be

9

provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent

10

class members' due process rights, approval of class action settlements involves three steps: (1) preliminary

11

approval of the proposed settlement including (if the class has not already been certified) conditional

12

certification of the class for settlement purposes; (2) notice to the class providing them an opportunity to

13

exclude themselves; and (3) a final fairness hearing concerning the fairness, adequacy, and reasonableness

14

of the settlement. *See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

15

At preliminary approval, the Court first determines whether a class exists. *Stanton v. Boeing*

16

*Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates whether the settlement is within

17

the "range of reasonableness." *See*, *generally*, 3 Conte & Newberg, *Newberg on Class Actions*, section

18

7.20 (4th ed. 2002) § 11.25. "Whether a settlement is fundamentally fair within the meaning of Rule 23(e)

19

is different from the question whether the settlement is perfect in the estimation of the reviewing court."

20

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).To make this determination at preliminary

21

approval, the Court may consider some or all of the following factors: (i) the extent of discovery completed,

22

and the stage of proceedings; (ii) the strength of the Plaintiff's case and the risk, expense, complexity and

23

likely duration of further litigation; (iii) the risk of maintaining class action status throughout trial; the

24

25

County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case

26

No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of

27

approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297

28

(L.A. Super. Ct.) (average net recovery of approximately $20).

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  amount offered in settlement; and (iv) the experience and views of counsel.  *See Stanton*, 327 F.3d at 959

2  (citing *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).  "Under certain circumstances, one factor

3  alone may prove determinative in finding sufficient grounds for court approval." *Nat'l Rural Telecom.*

4  *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal. 2004) (*citing Torrisi v. Tucson Elec. Power*

5  *Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

6  **B.**     **The Settlement Was Negotiated after Plaintiff's Counsel Conducted a Thorough**
   **Investigation of the Factual and Legal Issues.**

7

8          As set forth in greater detail above, based on their  analysis of documents produced by Defendant,

9  including policy and procedure documents, time and payroll records and information provided by relevant

10  witnesses, Plaintiffs' Counsel was able to realistically assess the value of Plaintiffs' claims and intelligently

11  engage defense counsel in settlement discussions that resulted in the proposed settlement now before the

12  Court.  (Bainer Decl. ¶3-5.)  By engaging in a thorough investigation and evaluation of Plaintiffs' claims,

13  Plaintiffs' Counsel can knowledgeably opine that the Settlement, for the consideration and on the terms set

14  forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class

15  Members in light of all known facts and circumstances, including the risk of significant delay and

16  uncertainty associated with litigation and various defenses asserted by Defendant.

17  **C.**     **The Settlement Was Reached through Arm's-Length Bargaining in Which All**
   **Parties Were Represented by Experienced Counsel.**

18

19          The Settlement is result of arm's-length negotiations.  The Parties participated in a private

20  mediation session with Tripper Ortman, Esq., who helped to manage the Parties' expectations and reach a

21  compromise agreement.[7]  The Parties were represented by experienced class action counsel throughout the

22  negotiations resulting in this Settlement.  Plaintiff was represented by The Bainer Law Firm, seasoned class

23

24  [7] *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195
    (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a
25  collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist.
    LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir.
26  2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the
    proceedings were free of collusion and undue pressure.")  At all times, the Parties' negotiations were
27  adversarial and non-collusive.

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  action counsel who regularly litigate wage and hour claims through certification and on the merits, and

2  have considerable experience settling wage and hour class actions.  (*See generally* Bainer Decl.)

3  Defendant was represented by Squire Patton Boggs, a nationally respected defense firm.

        **D.**     **The Proposed Settlement Is Reasonable Given the Strengths of Plaintiff's Claims and the Risks and Expense of Litigation.**

6         Plaintiffs evaluated the claims in light of the risks of continued litigation in order to determine a

7  reasonable range of class relief.  Although Plaintiffs believes the class claims are strong, Defendant disputes

8  liability and the appropriateness of class certification (for all purposes other than settlement) and has and

9  will vigorously defend the action.  Plaintiffs recognize that if the litigation had continued, they may have

10  encountered significant legal and factual hurdles that could have prevented the Class from obtaining any

11  recovery.  To be sure, a number of cases have found wage and hours actions to be especially amenable to

12  class resolution.[8]  However, some courts have gone the other way, finding that some of the very claims at

13  issue here—meal period, rest period, and off-the-clock violations—were not suitable for class adjudication

14  because they raised too many individualized issues.[9]

15  ───────────────

16  [8] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . .  The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide bases (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308).  These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected."  *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On*, *supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed essentially the same tasks, most of which were non-exempt as a matter of law).

[9] *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist.

1    Some courts have denied certification even when an employer's policies are unlawful on their face.

2    For instance, in *Ordonez v. Radio Shack, Inc*., 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17,

3    2013), the court denied certification even though the plaintiff submitted evidence of a facially unlawful

4    policy regarding rest breaks.  The *Ordonez* court concluded that the predominance and superiority elements

5    were not met based on the employer's presentation of anecdotal evidence of lawful compliance

6    notwithstanding the unlawful policy.  *Id.* at *38-40.

7    As the above examples illustrate, the prospect of certifying a wage and hour action is always

8    uncertain, and the risk of being denied class certification militates in favor of settlement.  A denial of class

9    certification effectively forecloses continued litigation, as neither the individual nor his or her attorney will

10   have any incentive to proceed with an individual case when such small claims are at stake.  *See In re*

11   *Baycol Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively

12   the "death knell" of the case, despite survival of individual claims).  In other words, for cases where

13   individual damages are relatively small, denial of class certification results in a near-complete loss for

14   Plaintiffs as well as no recovery for the employees, who are shut out of the action.  Thus, if the putative

15   Class had not been certified, the value of Plaintiffs' case would have been reduced to a fraction of the value

16   of this Settlement; indeed, Defendant would have likely offered no money to settle the class-wide claims if

17   certification had been denied.

18   In summary, although Plaintiffs and their counsel maintain a strong belief in the underlying merits

19   of the claims, they also acknowledge the significant challenges posed by continued litigation through

20   certification and/or at the merits stage.  Accordingly, when balanced against the risk and expense of

21

22   LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of
     proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate*
23   *Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and
     rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez*
24   *v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed.*
     *Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest
25   period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641,
     645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*,
26   245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues
     predominated when different employee stations provided different practices with respect to meal
27   periods).
28

Page 9

continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes").

### E.    The Proposed Class Representative Enhancement Payments Are Reasonable.

At final approval, Plaintiffs will request Court-approval of a Class Representative Enhancement Payment of $2,500 to each Plaintiff. Payments to named plaintiffs for their services as class representatives are customary and generally approved.[10]  Plaintiffs assisted Plaintiffs' Counsel with the preparation of the initial and amended complaint; provided Plaintiffs' Counsel with material evidence regarding the claims; assisted Plaintiffs' Counsel in marshalling the evidence necessary to prosecute the claims on behalf of the Class; and regularly sought reports on the status of the case.

Plaintiffs' Counsel believes that no action would likely have been taken by Class Members individually, and no compensation would have been recovered for them, but for Plaintiffs' services on the Class' behalf.  Plaintiffs have thus advanced California's public policy goal of enforcing wage and hour laws. *See Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 340 (2004).  It follows that the proposed Class Representative Enhancement Payments, both for Plaintiffs' services as class representatives, and for their general release of their own claims, is reasonable.

### F.    The Negotiated Attorneys' Fees and Costs Are Reasonable.

At final approval, Plaintiffs will seek Court-approval of the negotiated attorneys' fees in the amount of one-third of the common fund, or $216,666.67, and litigation costs currently estimated not to exceed $10,000.  (Settlement Agreement ¶7).

---

[10] *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995); *Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1380, 1393 (2010); *Bell v. Farmers Ins. Exchange*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing the case); *Stevens v. Safeway, Inc.*, Case No. 05-01988, 2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ($20,000 and $10,000 to two class representatives); *In Re Janney Montgomery Scott LLC Financial Consultant Litig.*, Case No. 06-3202, 2009 U.S. Dist. LEXIS 60790 (E.D. Pa. July 16, 2009) ($20,000 each to three  class representatives).  The incentive award should be approved so long as it is not so high [as] to create a conflict of interest between the representative and class members, or be divorced from the actual value the representative provided to the action. *Rodriguez v. West*, 463 F.3d at 959-61.

Plaintiffs' request for attorneys' fees in the amount of one-third of the common fund is reasonable under California law. "In diversity actions, federal courts look to state law in determining whether a party has a right to attorneys' fees and how to calculate those fees." *Mangold v. Calif. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The state law governing the underlying claims in a diversity action "also governs the award of fees." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). California courts routinely award attorneys' fees equalling one-third or more of the potential value of the common fund.[11]

If the Court reduces the attorney fees or costs, the difference between the fees and costs requested and the fees and costs approved by the Court will be deposited into the common fund and distributed to class members.

### G.     The Proposed Class Meets the Requirements of Rule 23.

Before granting preliminary approval of the Settlement, the Court must determine whether the proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); Manual for Complex Litigation, § 21.632. An analysis of the requirements of Rule 23(a) and 23(b)(3), commonly referred to as numerosity, commonality, typicality, adequacy, predominance, and superiority, shows that certification of this proposed settlement class is appropriate.

#### 1.     The Proposed Class Is Sufficiently Numerous and Ascertainable.

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121 (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).

Here, the proposed Settlement Class consist of any individual employed by G&K Services, Inc. as a Route Sales Driver, Route Sales Representative, Assistant to Delivery or Route Sales Helper in the state

---

[11] *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Theodore Eisenberg & Geoffrey P. Miller, Attorney Fees in Class Action Settlements: An Empirical Study, J. of Empirical Legal Studies, Vol. 1, Issue 1, 27-78, March 2004, at 35 (independent studies of class action litigation nationwide have come to a similar conclusion that a one-third fee is consistent with market rates).

of California at any time from June 19, 2013, to the date that the Court grants preliminary approval of this Settlement.  Approximately 175 individuals currently fall within this the Settlement Class.

### 2.    There are Common Questions of Law and Fact.

Commonality is satisfied "if there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The "commonality requirement has been 'construed permissively,' and its requirements deemed minimal."  *Estrella v. Freedom Fin'l Network*, 2010 U.S. Dist. LEXIS 61236 (N.D. Cal. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-1020 (9th Cir. 1998).  Here, all Class Members were employees of Defendant throughout California and were subject to the same employment policies and practices that serve as the basis for Plaintiff's allegations in the Complaint.

### 3.    Plaintiff's Claims Are Typical of the Proposed Class.

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020).  Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Plaintiffs' wage and hour claims are typical of the proposed Settlement Class because they arise from the same factual basis and are based on the same legal theories applicable to the other Class Members.  Likewise, Plaintiffs' interests are entirely coextensive with the interests of the Class.  Accordingly, Plaintiffs are typical of the Class Members they seek to represent.

### 4.    Plaintiff and Their Counsel Will Adequately Represent the Interests of the Proposed Settlement Class.

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied if: (1) the proposed representative Plaintiff does not have conflicts of interest with the proposed class, and (2) Plaintiff is represented by qualified and competent counsel.  *Hanlon*, 150 F.3d at 1020.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  The Rule 23(a) adequacy requirement is met here as Plaintiffs have represented putative Class

2  Members with a focus and zeal true to the fiduciary obligation that they have undertaken, working closely

3  with their attorneys throughout the case.

4  Plaintiffs' Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement.  Plaintiffs'

5  Counsel is experienced in wage and hour class litigation and have the credential to serve as adequate class

6  counsel.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)  ("will the named plaintiffs

7  and their counsel prosecute the action vigorously on behalf of the class?").

8  **H.      Common Issues Predominate Over Individual Issues.**

9  "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification

10  must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."  *Hanlon*, 150 F.3d

11  at 1022.  The California statutes relating to each of Plaintiffs' claims apply with equal force and effect to all

12  Class Members.  Factually, Defendant's policies and practices apply class-wide and Defendant's liability

13  can be determined by facts common to all members of the class.  The wage and hour issues are both

14  numerous and substantial, and a class action is the most advantageous method of dealing with the claims of

15  the Settlement Class Members.  *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012)

16  ("Claims alleging that uniform policy consistently applied to a group of employees is in violation of the

17  wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

18  Likewise, the fact that the Settlement affords all Class Members an equal opportunity to obtain

19  compensation for identical claims via a standardized process provides further support for the conclusion

20  that common issues of law and fact predominate and that the claims are amenable to class-wide resolution.

21  *See Amchem Products, Inc. v. Windsor*, 521 U.S. at 619 (rejecting the Third Circuit's holding that the

22  requirements of Rule 23 "must be satisfied without taking into account the settlement," and finding instead

23  that "settlement is relevant to a class certification.")

24  **I.      Class Settlement Is Superior to Other Available Means of Resolution.**

25  Similarly, there can be little doubt that resolving all Class Members' claims through a single class

26  action is superior to a series of individual lawsuits.  "From either a judicial or litigant viewpoint, there is no

27  advantage in individual members controlling the prosecution of separate actions. There would be less

28

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1   litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery."

2   *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the Settlement negotiated on behalf of the Class

3   demonstrates the advantages of a collective bargaining and resolution process.

4       Addressing the allegations through a class action is superior to individual litigation or any

5   alternative methods that may exist.  This action was filed precisely because Plaintiffs believe those

6   alternatives would have proven ineffective in addressing the problem on a class-wide basis.  Additionally,

7   although the value of the claims is not insignificant, the amount in controversy is not nearly enough to

8   incentivize individual action.  *See Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would

9   be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class

10  certification.").  As the class action device provides the superior means to effectively and efficiently resolve

11  this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement

12  Class proposed by the Parties is appropriate.

13         **J.**      **The Proposed Class Notice Adequately Informs Class Members About The Case**
14                      **And Proposed Settlement.**

15      The Notice of Class Action Settlement ("Class Notice")[12] jointly drafted and approved by the

16  Parties, provides Settlement Class Members with the information necessary to allow each potential

17  member to make an informed decision regarding his or her participation in the Settlement.  The Notice

18  provides information regarding the nature of the lawsuit, a summary of the substance of the settlement

19  terms, the class definition, the deadlines by which Class Members must submit Requests for Exclusion or

20  objections, the date for the final approval hearing; the formula used to calculate settlement payments, a

21  statement that the Court has preliminarily approved the settlement, and a statement that Class Members will

22  release the settled claims unless they opt out.  Accordingly, the Notice satisfies the requirements of Rule

23  23(c)(2).

24      If the Court grants preliminary approval, the Settlement Administrator will mail the Class Notice to

25  all Settlement Class Members via first class United States mail.  (Settlement Agreement ¶42).  In the event

26  Notice Packets are returned as undeliverable, the Settlement Administrator will attempt to locate a current

27

28  [12] *See*, Exhibit "B" to Bainer Decl.

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  address using, among other resources, an address update service such as NCOA or Accurint to obtain an

2  updated address.  (*Id.* at 13:14-21).  This method was negotiated by the Parties to maximize the Class

3  Member response rate while ensuring cost effective administration of the Settlement.

4         The last step in the settlement approval process is the Final Approval Hearing, at which time the

5  Court may hear all evidence and arguments necessary to evaluate the Settlement.  At the Final Approval

6  Hearing, proponents of the Settlement may explain and describe its terms and conditions and offer

7  arguments in support of settlement approval.  Class Members may be heard in support of or in opposition

8  to the Settlement.

9                                    **CONCLUSION**

10        The Parties have negotiated a fair and reasonable settlement of claims.  Having appropriately

11 presented the materials and information necessary for preliminarily approval, the Parties jointly request that

12 the Court preliminarily approve the settlement.

13

14 Dated: October 1, 2018                    THE BAINER LAW FIRM

15

16                                            By: */s/ Matthew R. Bainer*
                                                  Matthew R. Bainer
17                                                Attorneys for Plaintiffs
                                                  Jesse Hoffman and Philip Dolan
18
19 Dated:  October 1, 2018                    SQUIRE PATTON BOGGS (US) LLP

20

21                                            By: */s/ Michael W. Kelly*
                                                  Michael W. Kelly
22                                                Marisol C. Mork
                                                  Melissa B. Black
23                                                Attorneys for Defendant

24

25        I, Matthew R. Bainer, attest that all other signatures listed, and on whose behalf the filing

26 is submitted, concur in the filing's contents and have authorized the filing.

27

28