Matthew R. Bainer, Esq. (SBN 220972)
**THE BAINER LAW FIRM**
1901 Harrison St., Suite 1100
Oakland, California 94612
Telephone:     (510) 922-1802
Facsimile:      (510) 844-7701
mbainer@bainerlawfirm.com

*Attorney for Plaintiffs Jesse Hoffman and Philp Dolan*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JESSE HOFFMAN and PHILIP DOLAN, individually and on behalf of other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>G&K SERVICES, INC., a Minnesota corporation; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  5:17-cv-04465-LHK<br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:         April 25, 2019<br>Time:         1:30. p.m.<br>Courtroom:  8 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 25, 2019 at 1:30 p.m., or as soon thereafter as counsel may be heard, in Courtroom 850 of the above-captioned court, located at 280 South 1st Street, San Jose, CA 95113, the Lucy H. Koh presiding, Plaintiffs will, and hereby do, move this Court for entry of an order and judgment granting final approval of the class action settlement and all agreed-upon terms therein. This Motion, unopposed by Defendants G&K Sevices, Inc., G&K Services, LLC, Cintas Corporation No. 2 and Cintas Corporation No. 3, seeks final approval of: (1) the Joint Stipulation of Class Action Settlement and Release; (2) settlement payments to Participating Class Members; and (3) and costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declaration of Matthew Bainer; (4) the Declaration of Michael A. Carlin; (5) the Declaration of Erica O'Brien; (6) the Declaration of Tim Cunningham; (7) the [Proposed] Order Granting Final Approval of the Class Action Settlement and Judgment; (8) the records, pleadings, and papers filed in this action; and (9) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. FACTS AND PROCEDURE ............................................................................................ 2

    A. Brief Overview of the Litigation ........................................................................... 2

    B. Plaintiffs Actively Engaged in the Discovery Process .......................................... 2

    C. The Parties Settled After a Full Day of Arm's Length Negotiations at a Private Mediation ............................................................................................................... 3

    D. The Proposed Settlement Fully Resolves Plaintiffs' Claims ................................. 4

        1. Composition of the Settlement Class ........................................................ 4

        2. Settlement Consideration .......................................................................... 4

        3. Formula for Calculating Settlement Payments ......................................... 5

        4. Release by the Settlement Class ............................................................... 6

    E. The Notice and Settlement Administration Process Were Completed Pursuant to the Court Order ........................................................................................................ 6

III. ARGUMENT ..................................................................................................................... 7

    A. The Standard for Final Approval Has Been Met ................................................... 7

    B. The Settlement Was Achieved After Evaluating the Strengths of Plaintiffs' Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation ........ 9

    C. The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel ........................................................ 11

    D. The Settlement Was Negotiated after Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues ...................................................... 11

    E. The Settlement Class Has Responded Positively to the Settlement .................... 12

    F. The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval ....................................................................................... 13

IV. CONCLUSION ................................................................................................................ 13

Table of authorities

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453 (S.D. Cal. 2007) .......................................... 10

*Brown v. Fed. Express Corp.,* 249 F.R.D. 580 (C.D. Cal. 2008) ................................................... 10

*Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ................................... 12

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ......................................................... 11

*Gonzalez v. Officemax N. Am.*, 2012 WL 5473764 (C.D. Cal. Nov. 5, 2012) ............................... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................... 8

*Hopson v. Hanesbrands Inc.*, Case No. 08-00844, 2009 U.S. Dist. LEXIS 33900 (N.D.
    Cal. Apr. 3, 2009) ...................................................................................................................... 13

*In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist.
    LEXIS 108195 (N.D. Cal. Nov. 5, 2008) .................................................................................. 11

*In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS
    145551 (N.D. Cal. June 25, 2008) ............................................................................................. 11

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. Apr. 18, 2012) .................................. 10

*Kenny v. Supercuts, Inc.*, 252 F.R.D. 641 (N.D. Cal. 2008) .......................................................... 10

*Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003) ............................................................................... 8

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...................................... 8

*Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868 (C.D. Cal. Jan. 17, 2013) ............... 10

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ....................................................... 8

**STATE CASES**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135 (2000) ......... 12

*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121 (2006) .......................................................... 9

*Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012) ................................................... 9

*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443 (2007) ................................................. 9

*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286 (2010) ........................................................... 9

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ................................................................. 13

*Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462 (1981) ............................................................... 9

*Sav-On Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319 (2004) ...................................... 9

*Smith v. Super. Ct.*, 39 Cal. 4th 77 (2006) ....................................................................................... 9

**FEDERAL STATUTES**

Fed. R. Civ. P. 23(e) ......................................................................................................................... 7

**SECONDARY AUTHORITIES**

Manual for Complex Litigation (4th ed. 2004) ............................................................................ 7, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On December 13, 2018, the Court granted preliminary approval of the Joint Stipulation of Class Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement ("Class Notice") to all Class Members. Class Members were given 30 days to submit Requests for Exclusion or objections to the Settlement ("Response Deadline"). As of the date of this filing, Plaintiffs are pleased to report that: (1) not a single Class Member objected to the Settlement; (2) only 1 Class Member has opted out of the Settlement Class; and (3) the average payment to Participating Class Members is expected to be approximately $2,303.84, and the highest is approximately $5,194.28. (Declaration of Tim Cunningham ["Cunningham Decl."] ¶¶ 12-17.)

Plaintiffs now seek final approval of this Settlement with Defendants G&K Sevices, Inc., G&K Services, LLC, Cintas Corporation No. 2 and Cintas Corporation No. 3. ("Defendant" or "G&K") (collectively with Plaintiffs, the "Parties"). Defendant does not oppose this Motion for Final Approval of Class Action Settlement. The basic terms of the Settlement provide for the following:

(1)    A Settlement Class defined as: any individual employed by G&K Services, Inc. as a Route Sales Driver, Route Sales Representative, Assistant to Delivery or Route Sales Helper in the state of California at any time during the period from June 19, 2013 through December 13, 2018 (the date this Court granted Preliminary Approval).

(2)    A Class Settlement Amount of $650,000. The Class Settlement Amount includes:

(a)    A Net Settlement Amount of approximately $449,875.04 (the Class Settlement Amount minus the requested Attorneys' Fees and Costs, Settlement Administration Costs, and the requested Class Representative Enhancement Payments), which will be allocated to participating Class Members on a pro-rata basis according to the number of weeks that each Class Member worked as an hourly employee during the Class Period, less all employee and employer portions of any payroll tax requirements and any other applicable payroll deductions required by law;

(b)    Attorneys' fees of up to one-third of the Class Settlement Amount, but for which Plaintiff's Counsel has only requested $180,300.00 (or approximately 27.8%), and reasonable litigation costs and expenses of $6,574.96;

(c)    Settlement Administration Costs of $8,250, to be paid to the jointly selected class action settlement administrator CPT Group, Inc. ("CPT Group");

---

[1] Hereinafter, "Settlement" or "Settlement Agreement." Unless indicated otherwise, all capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

(e)    Class Representative Enhancement Payments of $2,500 to each of Plaintiffs Jesse Hoffman and Philip Dolan.

An objective evaluation of the Settlement confirms that the relief negotiated on the class' behalf is fair, reasonable, and valuable. The Parties negotiated the Settlement at arm's length with guidance from experienced class action employment mediator Tripper Ortman, Esq. and the Settlement provides relief to Class Members comparable to that which they might have hoped to win at trial. The relief offered by the Settlement is particularly notable when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases (*see infra*). Indeed, the proposed relief is arguably superior to the relief that the class might have obtained after additional costly litigation because by settling now, rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendants prevailing at trial.

Accordingly, given the Settlement's favorable terms and the manner in which these terms were negotiated and received by Class Members, Plaintiffs respectfully request that the Court grant this Motion for Final Approval of the Settlement Agreement and retain jurisdiction to enforce the Settlement.

## I.    FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

Plaintiffs filed their class action complaint on June 19, 2017 in Santa Clara County Superior Court. The Complaint alleges violations of (1) unpaid overtime; (2) unpaid minimum wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages; (6) failure to provide accurate wage statements; and (7) unfair competition. On August 4, 2017, Defendant removed the action to the United States District Court, Northern District of California pursuant to the Class Action Fairness Act.

Plaintiffs' Complaint's claims flow from the following core factual allegations:

- G&K did not consistently provide non-exempt employees with a timely meal or rest breaks, as required under California Law.

- G&K did not consistently pay employees for allegedly missed meal and rest breaks.

- G&K required employees to perform additional work tasks while off-the-clock, resulting in unpaid work time.

- As a derivative result of the above allegations, G&K failed to provide accurate pay stubs and failed to pay all terminated employees the correct amount of wages earned.

(Bainer Decl. ¶ 2)

### B. Plaintiffs Actively Engaged in the Discovery Process

Plaintiffs have conducted sufficient investigation and discovery in the Action in order to assess the merits and risks of the proceeding to trial with the claims brought herein, and the adequacy and fairness of this Settlement in light thereof. For example, Plaintiffs served, and Defendant responded to, written discovery in the form of both Special interrogatories and Requests for Documents. Plaintiffs subsequently met and conferred repeatedly regarding the scope of Defendant's production and responses and additional information to be provided. In response to this discovery, Defendant produced policy documents, handbooks, wage and hour records, and the results of a sampling of class member time records. Additionally, in support of the Parties' settlement negotiations and mediation session, Defendant provided data and information allowing Plaintiffs to determine the average hourly rate of pay for Class Members, the total approximate number of Class Members who worked during the Class Period, the total number of former employees during the Class Period and the total number of workweeks worked by Class Members during the Class Period. (Bainer Decl. ¶ 3)

Additionally, Plaintiffs' Counsel performed an extensive independent investigation into the claims at issue, including (1) determining the suitability of the putative class representatives through interviews, background investigations, and analyses of employment files and related records; (2) researching wage-and-hour class actions involving similar claims; (3) acquiring information regarding putative Class Members' potential claims, identifying additional witnesses, and obtaining documents in support of Plaintiffs' eventual Motion for Class Certification; (4) obtaining and analyzing Defendant's wage-and-hour policies and procedures; (5) researching the latest case law developments bearing on the theories of liability; (6) researching settlements in similar cases; (7) preparing valuation analyses of claims; (8) participating in a full-day private mediation session and preparing related memoranda; (9) negotiating the terms of this Settlement; (10) finalizing the Joint Stipulation of Class Action Settlement and Release; and (11) and drafting preliminary approval papers. The document and data exchanges allowed Plaintiffs'

Counsel to assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement. (Bainer Decl. ¶ 4.)

### C. The Parties Settled After a Full Day of Arm's Length Negotiations at a Private Mediation

After exchanging documents and conducting preliminary settlement discussions, the parties attended a mediation with Tripper Ortman, who specializes in mediating employment disputes, including wage and hour class actions. As a result of the mediation, the parties were able to reach an agreement on the principal terms of settlement. The parties continued to discuss and negotiate the remaining details over the course of several weeks. At all times, the Parties' negotiations were adversarial and non-collusive. The Settlement therefore constitutes a fair, adequate, and reasonable compromise of the claims at issue. (Bainer Decl. ¶ 5.)

### D. The Proposed Settlement Fully Resolves Plaintiff's Claims

#### 1. Composition of the Settlement Class

The proposed Settlement Class consists of any individual employed by G&K Services, Inc. as a Route Sales Driver, Route Sales Representative, Assistant to Delivery or Route Sales Helper in the state of California at any time during the period from June 19, 2013 through December 13, 2018 (the date this Court granted Preliminary Approval. (Settlement Agreement, p. 5:6-8)

#### 2. Settlement Consideration

Plaintiffs and Defendant have agreed to settle the underlying class claims in exchange for a Class Settlement Amount of $650,000. The Class Settlement Amount includes (1) settlement payments to each Settlement Class Member who does not file a request for exclusion; (2) up to $180,300.00 in attorneys' fees; (3) reasonable litigation costs and expenses of $6,574.96; (4) settlement administration costs of $8250.00; (5) Class Representative Service Enhancements of $2,500 to each Plaintiff. A premium is appropriate for Jesse Hoffman and Philip Dolan since they were lead plaintiffs, actively supported Plaintiffs' Counsel's efforts on behalf of the class and is executing a full release of claims as part of the Settlement Agreement.

Subject to the Court approving Attorneys' Fees and Costs, settlement administration costs, and the

Class Representative Service Enhancement, the Net Settlement Amount will be distributed to all Settlement Class Members who did not submit a request for exclusion. Because there is no claim form required to be submitted by the class members, 100% of the settlement fund will be paid out with no reversion of funds to the Defendant. Residue from any uncashed and voided checks will be distributed fifty percent (50%) to the Legal Aid Society of Santa Clara County and fifty percent (50%) to the Inner City Law Center in Los Angeles.[2]

### 3. Formula for Calculating Settlement Payments

Each Class Member's share of the Net Settlement Amount will be proportional to the number of weeks he or she worked as a Class Member during the Class Period. (Settlement Agreement ¶31) The Settlement Administrator will calculate Individual Settlement Payments as follows:

- Defendant will provide to the Settlement Administrator an electronic database of all Class Members, including each Class Member's name, social security number, last known address, telephone number(s), and, the total number of Workweeks.

- To determine each Class Member's estimated Individual Settlement Payment, the Settlement Administrator will divide the Net Settlement Amount by the total number of Workweeks for the entire Settlement Class, resulting in the Net Settlement Workweek Value, and then multiplying the Net Settlement Workweek Value by the number of workweeks worked by each Participating Class Member during the Class Period.

- The Individual Settlement Payment will be reduced by any required deductions for each Participating Class Member as specifically set forth herein, including employee-side tax withholdings or deductions. Defendant will pay any employer-side tax payments.

There are 178 Settlement Class Members, so the average net recovery is expected to be $2,527.39 and the highest recovery is expected to be $5,194.28. This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts.[3]

---

[2] Neither party or the Counsel herein have any professional or personal relationship with either proposed cy pres recipient. (*See*, Bainer Decl., ¶ 8; Declaration of Erica O'Brien ¶3; Declaration of Michael A. Carlin ¶2).

[3] *See*, *e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super.

#### 4. Release by the Settlement Class

In exchange for the Class Settlement Amount, Plaintiffs and Class Members who did not opt out will release the Released Claims. The Released Claims are those claims, within the applicable statute of limitations period (June 19, 2013, through December 13, 2018) "based on the facts or violations alleged in the Action" (Settlement Agreement ¶33).

### E. The Notice and Settlement Administration Process Were Completed Pursuant to the Court Order

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT Group, Inc. to provide settlement administration services. (Cunningham Decl. ¶ 2.) CPT Group' duties have and/or will include: a) preparing, printing and mailing the Notice of Class Action Settlement (hereinafter referred to as "Notice Packet"); b) performing a search based on the National Change of Address Database to update and correct any known or identifiable address changes; c) taking appropriate steps to trace, update and locate any Class Member whose address or contact information as provided to the Claims Administrator is inaccurate or outdated; d) establishing and maintaining a toll-free case support hotline where Class Members can speak to case representatives regarding case specific questions; e) establishing and maintaining a case website (www.cptgroup.com/gkservicessettlement); f) establishing and maintaining a case email address (gkservicessettlement@cptgroup.com) for Class Member inquiries and responses; g) receiving and providing to Class Counsel, Defendant's counsel, and the Court, copies of Workweek challenges and opt-out requests; h) providing to Class Counsel and Defendant's counsel a weekly report of the progress and completion of tasks identified in the Agreement; i) providing declaration(s) specifying the due diligence the Claims Administrator took with regard to the mailing of the Notice Packet; j) calculating the total number of workweeks for all Class Members and determining their Individual Settlement Payment amounts; k) calculating Defendant's share of payroll taxes, including FICA and FUTA, on the portion of each Individual Settlement Payment allocated to unpaid wages; l) maintaining prior to

---

Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

disbursement all settlement funds in a qualified settlement fund; m) processing, issuing, and mailing Individual Settlement Payments to Participating Class Members in addition to all proper payments to Plaintiffs, Class Counsel, and relevant tax authorities; n) issuing to each Participating Class Member a Form W-2 and a Form 1099 for each Individual Settlement Payment; and o) completing any associated tax withholding and reporting to the State and Federal tax authorities. (*Id.*)

On January 22, 2019, CPT Group received the Class Notice prepared jointly by Plaintiffs' Counsel and counsel for Defendants and approved by the Court. (Cunningham Decl. ¶ 3.) The Class Notice advised Class Members of their right to submit a request for exclusion from the Settlement, object to the Settlement or do nothing, and the implications of each such action. The Notice Packet advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information.

Separately, counsel for Defendants provided CPT Group with a mailing list (the "Class List"), which included each Class Member's full name, last known address, Social Security Numbers, and information necessary to calculate payments. (*Id.* at ¶ 5.) The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 6.) On February 8, 2019, CPT Group mailed Class Notices to Class Members via First-Class U.S. mail. (*Id.* at ¶7) Plaintiff is pleased to report that, to-date not a single Class Member has objected and only one single Class Members has requested exclusion from the Settlement. (*Id.* at ¶¶ 12-15.)

### III.  ARGUMENT

#### A.  The Standard for Final Approval Has Been Met

A class action may only be settled, dismissed, or compromised with the Court's approval. Fed. R. Civ. Proc. 23(e). The process for court approval of a class action settlement is comprised of three principal stages:

<u>Preliminary Approval</u>:  The proposed settlement agreement is preliminarily reviewed by the Court for fairness, adequacy, and reasonableness. If the Court believes the settlement falls within the range of reasonableness, such that proceeding to a formal fairness hearing is warranted, it orders notice

of the settlement disseminated to the class. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004).

<u>Class Notice</u>: Notice of the settlement is disseminated to the class, giving class members an opportunity to object to the settlement's terms or preserve their right to bring an individual action by opting out. *See id.*, § 21.633.

<u>Final Approval</u>: A formal fairness or final-approval hearing is held by the Court, at which class members can be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement is presented.[4] Following the hearing, the Court decides whether to approve the settlement and enter a final order and judgment. *See id.*, § 21.634.

The first two steps have been the completed. The Court has preliminarily reviewed the proposed settlement for fairness and found it to be within the range of reasonableness meriting court approval. (*See* December 13, 2018, Order Granting Preliminary Approval of Class Settlement, Dkt. No. 38.) In addition, the Settlement Administrator has notified Class Members of the proposed settlement and upcoming fairness hearing as directed by the Court. (*See generally* Cunningham Decl.) Plaintiff now asks the Court to grant final approval of the proposed settlement.

The decision about whether to approve the proposed settlement is committed to the sound discretion of the trial judge and will not be overturned except upon a strong showing of a clear abuse of discretion. *Hanlon*, 150 F.3d at 1026-1027. The Ninth Circuit has set forth a list of non-exclusive factors that a district court should consider in deciding whether to grant final approval, namely: (1) the strength of plaintiff's case, and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status throughout the trial; (3) the amount offered in settlement; (4) the extent of discovery completed, and the stage of the proceedings; (5) the experience and views of counsel; and (6) the reaction of the class members to the proposed settlement. *Id.* at 963 (citing *Molski v.*

---

[4] A proposed class action settlement may be approved if the Court, after allowing absent class members had an opportunity to be heard, finds that the settlement is "fair, reasonable, and adequate." In making this determination, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation . . . .").

*Gleich*, 318 F.3d 937, 953 (9th Cir. 2003)).

These factors, which are discussed below, confirm that the proposed settlement is more than fair, reasonable, and adequate for Class Members. The settlement provides considerable value; Class Members need not bear the risk and delay associated with trial proceedings to obtain these benefits; and the settlement has been met with substantial support and no opposition from Class Members.

### B. The Settlement Was Achieved After Evaluating the Strengths of Plaintiff's Case and the Risks, Expense, Complexity, and Likely Duration of Further Litigation

Plaintiff evaluated the claims in light of the risks of continued litigation in order to determine a reasonable range of class relief. Although Plaintiff believes the class claims are strong, Defendant disputes liability and the appropriateness of class certification (for all purposes other than settlement) and has vigorously defended the action. Plaintiff recognizes that if the litigation had continued, he may have encountered significant legal and factual hurdles that could have prevented the Class from obtaining any recovery. To be sure, a number of cases have found wage and hours actions to be especially amenable to class resolution.[5] However, some courts have gone the other way, finding that some of the very claims at issue here—meal period, rest period, and off-the-clock violations—were not suitable for class adjudication because they raised too many individualized issues.[6]

---

[5] *See Brinker Restaurant Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment . . . The theory of liability – that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law - is by its nature a common question eminently suited for class treatment."). Litigation of wage and hour claims on class-wide bases (1) encourages the vigorous enforcement of wage laws (*Smith v. Super. Ct.*, 39 Cal. 4th 77, 82 (2006)); (2) "eliminates the possibility of repetitious litigation" (*Sav-on Drug Stores, Inc. v. Super. Ct. (Rocher)*, 34 Cal. 4th 319, 340 (2004)); (3) affords small claimants a method of obtaining redress (*id.*); (4) "deter[s] and redress[es] alleged wrongdoing" (*Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th 1286, 1298 (2010)); (5) "avoid[s] windfalls to defendants" (*Brinker*, 53 Cal. 4th at 1054); (6) avoids "inconsistent or varying adjudications" (*Aguiar v. Cintas Corp. No. 2*, 144 Cal. App. 4th 121, 129 (2006)); and (7) alleviates the concerns of employees about retaliation (*Gentry v. Super. Ct. (Circuit City Stores)*, 42 Cal. 4th 443, 462-63 (2007); *Jaimez v. Daiohs USA, Inc.*, 181 Cal. App. 4th at 1308). These policies are so strongly favored that "class certifications should not be denied [in wage and hour cases] so long as the absent class members' rights are adequately protected." *Richmond v. Dart Industries, Inc.*, 29 Cal. 3d 462, 474 (1981); *see also Sav-On*, *supra*, 34 Cal. 4th 319 (upholding certification of an overtime class action based on a showing that all plaintiffs performed jobs that were highly standardized, and as a result, class members performed essentially the same tasks, most of which were non-exempt as a matter of law).

[6] *See Duran v. U.S. Bank National Association*, 59 Cal. 4th 1, 31 (2014) (reversing a verdict from a class trial); *Augustus v. ABM Security Services, Inc.*, 233 Cal. App. 4th 1065 (2014) (finding that the trial court erred in granting summary adjudication and summary judgment to security guards who were on call during rest breaks because neither the Labor Code nor the applicable wage order mandated that employees be relieved of all duties during rest breaks); *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1341 (2009) (affirming denial of certification because employees' declarations attesting to having taken meal and rest breaks demonstrated that individualized

Some courts have denied certification even when an employer's policies are unlawful on their face. For instance, in *Ordonez v. Radio Shack, Inc.*, 2013 U.S. Dist. LEXIS 7868, *35-41 (C.D. Cal. Jan. 17, 2013), the court denied certification even though the plaintiff submitted evidence of a facially unlawful policy regarding rest breaks. The *Ordonez* court concluded that the predominance and superiority elements were not met based on the employer's presentation of anecdotal evidence of lawful compliance notwithstanding the unlawful policy. *Id*. at *38-40.

As the above examples illustrate, the prospect of certifying a wage and hour action is always uncertain, and the risk of being denied class certification militates in favor of settlement. A denial of class certification effectively forecloses continued litigation, as neither the individual nor his or her attorney will have any incentive to proceed with an individual case when such small claims are at stake. *See In re Baycol Cases I & II*, 51 Cal. 4th 751, 758 (2011) (explaining that a dismissal of class claims is effectively the "death knell" of the case, despite survival of individual claims). In other words, for cases where individual damages are relatively small, denial of class certification results in a near-complete loss for Plaintiff as well as no recovery for the employees, who are shut out of the action. Thus, if the putative Class had not been certified, the value of Plaintiffs' case would have been reduced to a fraction of the value of this Settlement; indeed, Defendant would have likely offered no money to settle the class-wide claims if certification had been denied.

In summary, although Plaintiffs and their counsel maintain a strong belief in the underlying merits of the claims, they also acknowledge the significant challenges posed by continued litigation through certification and/or at the merits stage. Accordingly, when balanced against the risk and expense of continued litigation, the settlement is fair, adequate, and reasonable. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("the very essence of a settlement is compromise, a yielding of absolutes

---

inquiries were required to show harm); *Campbell v. Best Buy Stores, L.P.*, 2013 U.S. Dist. LEXIS 137792, at *30-41 (C.D. Cal. Sept. 20, 2013) (following *Brinker* and denying certification of proposed off-the-clock and rest and meal break classes due to lack of uniform policy); *Jimenez v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.,* 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc.*, 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

and an abandoning of highest hopes").

### C. The Settlement Was Reached through Arm's-Length Bargaining in Which All Parties Were Represented by Experienced Counsel

As discussed above, the Settlement is result of arm's-length negotiations. The Parties participated in both a mandatory settlement conference and a private mediation before experienced class action employment mediator Michael J. Loeb, Esq. Mr. Loeb helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides.[7] The Parties were represented by experienced class action counsel throughout the negotiations resulting in this Settlement. Plaintiffs' Counsel are seasoned in class action litigation and regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. Defendant was represented by Squire Patton Boggs, a nationally respected defense firm.

### D. The Settlement Was Negotiated after Plaintiffs' Counsel Conducted a Thorough Investigation of the Factual and Legal Issues

As set forth in greater detail above, based on their analysis of documents produced by Defendants, including a representative sample of time and payroll records and relevant policy and operational documents, as well as information provided by Class Members during interviews, Plaintiffs' Counsel were able to realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement discussions that resulted in the proposed settlement now before the Court. (Bainer Decl. ¶¶ 3-5.) By engaging in a thorough investigation and evaluation of Plaintiffs' claims, Plaintiffs' Counsel can knowledgeably opine that the Settlement, for the consideration and on the terms set forth in the Settlement Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members in light of all known facts and circumstances, including the risk of significant delay and uncertainty associated with litigation and various defenses asserted by Defendant.

---

[7] *In re Apple Computer, Inc. Derivative Litig.*, No. C 06-4128 JF (HRL), 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) (mediator's participation weighs considerably against any inference of a collusive settlement), *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF (HRL), 2010 U.S. Dist. LEXIS 145551 (N.D. Cal. June 25, 2008) (same); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure.") At all times, the Parties' negotiations were adversarial and non-collusive.

### E.     The Settlement Class Has Responded Positively to the Settlement

The Settlement Class' response demonstrates its support for this settlement—to date not a single Class Member has objected to, and only 1 Class member has opted out of, the Settlement.  Participating Class Members will share the Net Settlement Amount, and will receive an average payment of $2,527.39 (Cunningham Decl. ¶14-17.)  A low number of opt outs and objections is a strong indicator that a settlement is fair and reasonable.  *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (class response favorable where "[a] mere 80 of the 5,454 national class members elected to opt out  [(1.5% of the entire Class)] and . . . [a] total of nine members . . . objected to the settlement); *Churchill Village, LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) (affirming settlement approval where 45 of approximately 90,000 notified class members objected and 500 opted out).  The Settlement Class' response compares favorably to those cases and warrants final approval.

Likewise, the average Class Member recovery of $2,527.39 compares favorably to other wage and hour class action settlements for similar claims on behalf of non-exempt employees.  *See*, *e.g.*, *Badami v. Grassroots Campaigns, Inc.*, Case No. C 07-03465 JSW (N.D. Cal. Sept. 15, 2008) (average net recovery of approximately $195); *Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct.) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Contreras v. United Food Group, LLC*, Case No. BC389253 (L.A. County Super. Ct.) (average net recovery of approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County Super. Ct.) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*, Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65); *Sorenson v. PetSmart, Inc.*, Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); and *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20).

### F. The Requested Payment to the Settlement Administrator Is Reasonable and Should Receive Final Approval

Plaintiff's request final approval of claims administration costs in an amount of $8,250.00. CPT Group has promptly and properly distributed the Class Notice to all Class Members and completed its duties in accordance with the settlement terms and the Court's preliminary approval Order. (*See generally* Cunningham Decl.) Accordingly, the payment is fair and reasonable and should be accorded final approval along with the rest of the Settlement terms.

### IV. CONCLUSION

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, final approval of the Settlement should be granted.

Dated: April 8, 2019                        THE BAINER LAW FIRM

                                            By: */s/ Matthew R. Bainer*
                                                Matthew R. Bainer
                                                Attorneys for Plaintiffs Jesse Hoffman and
                                                Philip Dolan